MASSACHUSETTS & SOUTHERN CONST. Co. *v.* TOWNSHIP OF GILL'S CREEK *et al.*

*In re* HART.

*(Circuit Court, D. South Carolina.   November 11, 1891.)*

1. **ATTORNEY'S LIEN.—SERVICES RENDERED IN STATE COURTS.**
   In South Carolina an attorney's lien is limited to his disbursements and the costs taxed; and therefore a federal court sitting in that state cannot declare a lien on the fruits of its judgment for services rendered in the state courts 'in litigation concerning the same subject-matter.
2. **SAME—NATURE AND EXTENT.—SERVICES RENDERED IN OTHER SUITS.**
   An attorney's lien upon the fruits of a suit is limited to the services rendered therein; and, although a number of separate suits involve the same questions, and are argued and determined together, the fruits of one are not subject to a lien for services rendered in the others.
3. **SAME—PROSPECTIVE SERVICES.**
   Nor will the lien extend to prospective services in the hearing of an appeal.
4. **SAME—RIGHTS OF SEVERAL ATTORNEYS.**
   When several attorneys have rendered services for the complainant in a suit, they are equally entitled to a lien for compensation on the fruits of the judgment, and, if one of them has obtained an assignment of such fruits, his possession cannot be disturbed in favor of another.

In Equity.

*Ex parte* petition of James F. Hart, in the case of the Massachusetts & Southern Construction Company against the township of Gill's Creek, York county, S. C., and the Boston Safe-Deposit & Trust Company, to assert a lien for services rendered the complainant as an attorney in that and other cases.   Dismissed.

*C. E. Spencer*, for petitioner.

*Samuel Lord*, opposed.

SIMONTON, J.   A railroad company had been incorporated under the name of the Charleston, Cincinnati & Chicago Railroad Company, for the purpose of building a railroad from Charleston, S. C., towards Chicago.   The Massachusetts & Southern Construction Company contracted to construct the railroad, and a part of the consideration of this contract was the delivery to it of township bonds issued in subscription to the railroad company under the authority of the general assembly of South Carolina.   By an agreement made between the construction company and the authorities of the several townships, these bonds were placed on deposit with the Boston Safe-Deposit & Trust Company, to be

delivered to the construction company when certain conditions were fulfilled. Before these bonds were delivered much litigation arose in the courts of the state of South Carolina respecting the validity of township bonds; and, bonds of the character of these of which we are speaking having been declared invalid, an act of the legislature was passed seeking to cure the defect, and the question of the validity of this act was made in courts of that state. The litigation then began in this court. Eight separate suits were brought by the Massachusetts & Southern Construction Company, in all of which the Boston Safe-Deposit & Trust Company was a party. The townships of Cherokee, Broad River, York, Catawba, Ebenezer, Cane Creek, Gill's Creek, and Pleasant Hill, respectively, were each a co-defendant with it in its own separate suit. 42 Fed. Rep. 750. Each one of these suits sought the delivery to the construction company of the bonds of the defendant township, upon the allegation that all of the conditions precedent were fulfilled. To each suit there was a separate answer. The defense in the cases were the same,—the invalidity of the subscription and the bonds; and in one (Cane Creek) there was another and distinct ground of defense. The result of the litigation in this court was that the defense of Cane Creek was sustained, and an order was entered in each of the other cases for the delivery of the bonds therein referred to to the construction company. All of the townships defendant but one (Gill's Creek) acquiesced in the decision, and the bonds issued by them, and in the hands of the Boston Safe-Deposit & Trust Company, became the property of the construction company. The bonds of Gill's Creek township, in par value $39,000, still remain on deposit, awaiting the result of an appeal to the supreme court. The petitioner alleges that he was engaged professionally in the litigation in the state courts and in this court, having been retained by the Massachusetts & Southern Construction Company; that no fixed sum was contracted for, but that his services in the state court and in this court were reasonably worth $5,000, and for his services in the case under appeal, present and prospective, he claims $1,000. He sets up a lien on the bonds of Gill's Creek township for these services as in part the fruit of his labor and skill, professionally rendered. He prays that his lien may be protected, and to this end that the Boston Safe-Deposit & Trust Company may be ordered to deliver the bonds to him, and so perfect his lien. The answer of the company sets up three defenses: (1) That petitioner was the attorney of the railroad company and of the construction company at a fixed salary, and that he can make no further charge for services which he may have rendered. (2) It denies that his services were worth the sum stated by him, and also denies that he has any lien of any nature on these bonds. (3) It avers that on 13th December, 1890, all the bonds of Gill's Creek township were legally sold and assigned to John H. Albin. The notice thereof has been given to the Boston Safe-Deposit & Trust Company.

Mr. Hart in the litigation in the state courts was associated with Messrs. Sheppard & Shand. In the litigation in this court, the attorneys of record were Lord & Hyde; Messrs. J. H. Albin and Hart were

of counsel.   There can be no doubt that from an early period courts have always interfered in securing to attorneys the fruit of their labors, even as against their own clients.   *Ex parte Bush,* 7 Vin. Abr. 74. This is an equitable interference on the part of the court, (*Barker* v. *St. Quintin,* 12 Mees. & W. 441,)—the enforcement of a claim or right on the part of the attorney to ask the intervention of the court for his own protection, when he finds that there is a probability that his client may deprive him of his costs, (*Mercer* v. *Graves,* L. R. 7 Q. B. 499.)   See, in full, *In re Knapp,* 85 N. Y. 285.   For the want of a better word, it is called a "lien;" but this so-called "lien" is limited to the funds collected in the particular case in which the services were rendered.   *In re Wilson,* 12 Fed. Rep. 235.   This is the rule followed by all courts, without requiring the sanction of a statute.   In England until the statute of 18 Victoria the lien of an attorney was confined to the taxed costs and his disbursements.   In South Carolina there is no provision by statute on the subject, and that rule of the English court is followed strictly.   *Scharlock* v. *Oland,* 1 Rich. Law, 207; *Miller* v. *Newell,* 20 S. C. 123, 128.   The courts of the United States seem to protect attorneys in their fees as well as in their taxed costs.   In *Wylie* v. *Coxe,* 15 How. 415, the court protected an attorney by securing him the percentage contracted to be paid him on recovery.   In *Cowdrey* v. *Railroad Co.,* 93 U. S. 354, an attorney was secured the fee he had expressly contracted for. So, also, in *McPherson* v. *Cox,* 96 U. S. 404.   These were express contracts. As this protection to the attorney is founded upon the idea "of a contract implied by law," and as effectual as if it resulted from an express agreement, (*Ex parte Bush, supra; Cowell* v. *Simpson,* 16 Ves. 279,) and as the statutes of the United States expressly recognize the right of attorneys to charge their clients reasonable compensation for their services, in addition to taxable costs, (Rev. St. U. S. § 823,) it would seem that the United States courts will also protect the implied contract.

The petitioner's claim is upon a fund arising under a judgment in this court for services rendered in the state courts and in this court,— a right arising under contract.   *Cowell* v. *Simpson, supra.*   As the law of South Carolina confines such a lien to costs and disbursements, it is clear that the counsel fee could not have entered into the contract of service in the state court, even if the recovery were had there.   This protection of attorneys, in the absence of a statute, is given by each court to its own officers.   This court would not—perhaps I should say could not—extend the protection to services rendered in another wholly distinct jurisdiction.   There is another consideration.   There were eight separate suits and seven separate recoveries.   All the bonds recovered in six suits have been removed from the control of the court.   It is true that there was one question, common to all of the suits; but they were argued together simply for the sake of convenience.

If, as we have seen, the protection is given to an attorney as against a particular fund, for his services in the suit gaining that fund, and that only, how can we fix on the Gill's Creek bonds the claim for services rendered to the other bonds?   This would be a general lien.   See Jones,

Liens, § 194, and cases quoted. How can we tell what part of the $5,000 is to be allotted to the Gill's Creek bonds? Of course, as the protection is for services rendered, there can be no lien for $1,000, a prospective charge for services to be rendered. But the assignment to J. H. Albin disposes of the matter. He, with the petitioner and Messrs. Lord & Hyde, were all engaged on the same side in the same case. If the petitioner has a right to the protection of the court, so, equally, has each one of them, and in each of them the right is equitable. *Barker* v. *St. Quintin, supra.* But with this equity Mr. Albin has, so to speak, the legal title. When equities are equal, the law will prevail. He cannot be disturbed in his right of possession. Without entering into the question whether Mr. Hart was specially retained by the complainant, the petition must be dismissed.